the certificates, or the Superintendent of Banks can bring a suit, for the like purpose as in *State, ex rel. Squire, Supt. of Banks,* v. *National City Bank of Cleveland,* 56 Ohio App., 401, 11 N. E. (2d), 93, wherein an unusually fine and comprehensive opinion by Judge Matthews was filed, admirably covering the principal point in the instant case, namely, that though large, undefined discretion is vested in the superintendent when liquidating insolvent banks, the statutory provision twice quoted furnishes a remedy to aggrieved persons having contractual rights, one class of whom would be depositors questioning the validity of unlawful trusts created by the banks.

GUERNSEY, P. J., CROW and KLINGER, JJ., of the Third Appellate District, sitting by designation in the Eighth Appellate District.

THE STATE OF OHIO, APPELLEE, *v.* FEAK, APPELLANT.

(Decided November 28, 1938.)

*Mr. Thomas J. O'Connor,* prosecuting attorney, and *Mr. Harry Friberg,* for appellee.

*Mr. Meyer Goldberg* and *Mr. Leonard E. Donovan* for appellant.

Lloyd, J.   The appellant, James Feak, was indicted by the grand jury of Lucas county for an alleged violation of Section 13062, General Code.

The indictment charges that Feak, "On the 12th day of August, 1937, * * * did occupy certain public grounds in Adams township, Lucas county, Ohio, known as the Lucas County Fairgrounds, with apparatus, books and other devices for recording wagers and selling pools upon the result of a contest of speed between certain beasts, to wit: dogs—contrary to the statute in such case made and provided and against the peace and dignity of the state of Ohio."

The trial in the Court of Common Pleas resulted in a verdict of guilty.   Motion for a new trial was overruled and Feak was thereupon sentenced to pay a fine of $100 and costs of prosecution.   From this judgment he appeals to this court on questions of law.

The facts in evidence are that Feak leased the Lucas County Fairgrounds for various periods of time for the purpose of conducting midget automobile races and other attractions and by a supplementary agreement was given the privilege of using the fairgrounds for the promotion of greyhound racing, which he thereafter proceeded to do.   The plan of operation was that what were designated as first purse options, second purse options and third purse options were sold for $2 each and, whether the dog upon which the purse option was purchased won or lost, the owner of the option to purchase an interest in the purse earnings might exercise it, or not, as he chose.   To do so, however, he must pay an additional $8.

On the face of the ticket purchased by the prosecuting witness is the following:

"First Purse Option
"1118
"First Purse Option
"Fort Miami Kennel Club
"*         01        3."

On the reverse side thereof appears the following:
"$2 First Purse Option.

"In consideration of the sum of $2 paid by the holder hereof, the Fort Miami Kennel Club, acting as agent of the owner of the greyhound identified on the reverse side hereof by number, does hereby sell and grant to said holder an option to purchase before 8 p. m. of the day following the date of purchase hereof a 1/500 interest in all the net first purse earnings of said greyhound for a period of five years from the date hereof by the further payment of the sum of eight dollars.

"Fort Miami Kennel Club."

Prospective purse option purchasers were furnished with programs of the racing events in which were given the names of the dogs and their respective numbers, which numbers corresponded with those on the tickets.

In this program we are told that:

"The Management of the Ft. Miami Kennel Club pledges itself to give to the patrons and fans of greyhound racing in this vicinity the utmost in greyhound racing and fair dealing. The track will be conducted under the same rules and regulations as used by the Florida State Racing Commission."

And also that:

"Positively No Minors Allowed.

"The management regrets that it cannot allow Children on the grounds.

"This ruling is in accordance with the policies adopted by the leading greyhound tracks."

In the preface to the program, appears the following:

"Welcome

"Tonight marks the opening of one of America's leading sports—'the Sport of Queens.'

"The Fort Miami Kennel Club welcomes you to the opening of the 1937 Greyhound Racing Season.

"The management feels that the general sports-loving public of Toledo and vicinity will appreciate their efforts to provide clean, wholesome sport of an entertaining nature, and to that end has spared no expense to make this track one of the most modern plants of its kind in the country.

"Never before has a more capable group of officials been assembled. These men have all been chosen for their unquestioned integrity, ability and years of experience.

"They will try to conduct racing in such a way and amid such pleasant surroundings as to command the respect and support of this community."

If the dog corresponding to the number on the ticket won, the holder of the ticket might surrender it for his share of the purse earnings of the race won, or, by paying $8 in addition to the $2 paid for the ticket, could acquire the designated fractional interest in the purse earnings of the dog for a period of five years. For example, if his return on the race were $10.80, he might exercise his five-year option and still be ahead 80 cents, or if he lost, he might exercise his continuing five-year's interest in the purse earnings of the dog by the payment of an additional $8 as heretofore stated.

When the purchaser of a ticket exercises his option to purchase a five-year interest in the purse earnings of the dog designated by the ticket number, the assignment thereof by the owner to him is in form like the following assignment of an option exercised by one of the ticket-holders, a witness at the trial of the instant case:

"Assignment of Purse Earnings.

"In consideration of the further payment of the sum of eight ($8) dollars to him in hand paid J. D. Zutt of the city of Louisville, county of Jefferson and state of Kentucky does hereby assign, transfer and set over unto the option holder James O'Reilly of the city

of Toledo, county of Lucas and state of Ohio a one-five-hundredth (1/500) interest in the net first purse earnings of the greyhound Grace Wallin owned by the said J. D. Zutt for a period of five (5) years, commencing on the 12th day of August, 1937, and the said J. D. Zutt does hereby direct any and all persons, partnerships, associations or corporations to pay to the herein designated assignee such interest as may appear herein in and to any and all purse earnings due from the said persons, partnerships, associations or corporations to the said...................''

The whole scheme is so obviously a promotional effort to make money by a technical and artificial arrangement to avoid the state laws against gambling, that it would tax the credulity of any intelligent person to believe the claims of good faith made by appellant in respect to it.

In argument it was sought to place dog racing on the same plane with horse racing. There is in fact no comparison. The ''Horse Racing Act'' of Ohio, Section 1079-1 *et seq.*, General Code, elaborately provides the conditions under which such racing and wagering thereon may be promoted and held. The official sanction thus given by the state to horse racing is hedged about with restrictions, under the supervision of a state commission. This commission is vested with the power to establish rules, regulations and conditions under which horse racing may be conducted and to issue, suspend, diminish or revoke permits to conduct such events.

There is no legislative sanction for racing of dogs for wagers, and it is not extreme to suggest that without the element of wager, interest in promoting either horse or dog racing would not long exist. If ever the General Assembly sees fit to legalize dog racing for wagers in this state, presumably it will pass similar, adequate, restrictive laws in relation thereto, not only for the protection of the ''general sports-loving pub-

lic" but also to prevent abuse and mistreatment of the animals.

In our judgment, the scheme in the instant case, admittedly and patently devised to avoid the effect of Section 13062, General Code, is in effect like that outlined in the case of *State, ex rel. Ely, Pros. Atty.*, v. *Falls Cities Amusement Co.*, 124 Ohio St., 518, 179 N. E., 405, 79 A. L. R., 568, and clearly within the principles therein announced.

So concluding, no more need be said except that the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

CARPENTER and OVERMYER, JJ., concur.